Seated, ladies and gentlemen, good morning. We have six cases on the calendar this morning, two patent cases. A case from the Court of Federal Claims, one from the Court of International Trade, a government employee case and a veteran's case. The latter two are being submitted on the briefs and therefore will not be argued. Our first argued case is PRISM TECHNOLOGIES v. MCAFEE, et al., 2013-1135. We'll hear from Mr. Banas, is it? That's correct, Your Honor. Thank you, Your Honor. Christopher Banas, representing the appellant at PRISM TECHNOLOGIES, may it please the Court. The appellant's appeal is quite straightforward. There are two points that we raise, major points that we raise in our briefing. The first is whether the district court properly applied the test in determining, in summary judgment, that PRISM's patent was not infringed. Test being applying the facts seen in the light most favorable to the plaintiff to the claims as construed by the court. In PRISM's view, PRISM submitted substantial evidence in the form of expert testimony, documents supplied by the defendants, testimony from defendants' witnesses, excuse me, that the defendants' products contained data, digital data known in advance on their product CDs, which in PRISM's view met the definition of hardware key. And that data was compared to data on their back-end servers as part of an authentication process. Now, if that data was not successfully compared, then the authentication process would fail. Is it your view that a trial court once it pronounces a claim construction cannot in any way clarify that construction upon summary judgment? I'm not sure that I would take that position, but I would say I don't believe that's what occurred here. In other words, there is very little discussion of the construed claims at all in the district court's opinion as the district court is analyzing infringement. Instead, we have sort of an analysis of the usefulness of the invention. What's the purpose of the invention? Not a discussion of here are the patent's claims, here is how they are properly construed, here is the evidence, let's match those up to see... Well, it's pretty clear, though, from the summary judgment that the court specifically found that digital identification required identification of either a user or the user's computer. Did it not? I would disagree. I think that when the district court is discussing the determination of infringement, the district court is talking in broad strokes about the invention, but the district court never even mentions its actual construction of the term, and there is no section of the order, excuse me, where the district court says, I've now reconsidered my opinion and I now believe that there is an additional limitation on term digital ID. And certainly that wasn't briefed or argued in the process of summary judgment in terms of changing the claim construction. Well, if we find as a matter of law that the claim construction requires the very identification that ultimately, at least, it seemed the trial court required, would there be any issues of fact that would prevent judgment in favor of your opponent? I believe then, in that instance, we would have a new claim construction arrived at for the first time, and the proper course would be remanded to determine whether or not we would have to look at the totality of the evidence. We simply didn't adduce evidence in that process of summary judgment to fit a claim construction that hadn't yet been issued. We were working with the claim construction, the court actually did issue, required digital data whose value was known in advance. But if Judge O'Malley is right, even if the court's claim construction was wrong, then why isn't that harmless error and a useless exercise to send it back to the district court when it's fairly clear that the claims require identification of a particular user or computer? There are a couple parts to that. Right, you can do it 1A and 1B. Okay, so 1A, I'm not sure, and I still don't completely understand the claim construction that the appellees are offering this court, but it is not the claim construction that they offered below. So this court would be asked to enter a new claim construction at variance from the one entered by the district court and at variance from the construction that's argued by any parties below. And we feel that's procedurally improper. If the court were to do that... What are we construing here? Digital identification? Yes. And didn't the court also say that it's capable of filling the role of the identity data, that is, being data insufficient for the system to determine whether a person, organization, or computer is authentic and entitled to access protected resources? Isn't that an acceptable claim construction? So we don't have any trouble with the claim constructions that the court actually entered below. The construction of identity data is authentic and or entitled to access resources. And so what the defendant's systems do in many cases is simply determine whether or not that user is entitled to access the resources, which would be the updates in the case made by herself. The answer to your second question are going to be the claims require a multi-factor process of identification. The claims do not require in all instances and in all environments, and certainly the specification does not either, that the digital identification alone carry the complete burden of authentication or authorization. In fact, it's a combination of factors in the patent and in the claims. So long as you have an external hardware device or object that contains a code that is matched up to one on the servers, you've satisfied that element. But the identity data comprises more than that. And in our theory of the case... And the court agreed with you on that point. In other words, the court said that the hardware key doesn't have to tell you who the user is. You can have other information to get there. So you prevailed on that part of your argument. What the court said is the hardware key has to do one or the other. Has to at least get you that either the computer's identified or the individual's identified. I don't believe that's inherent in the constructions. I think when I read the opinion, what the court did was think about the invention as a whole and how the court below thought it should work and agreed with the defense factual arguments that it just doesn't make sense the way presented in this case. But that's not the infringement argument. And in fact, we do have facts to show that the invention works quite well. So the digital identification taken from the CDs and compared on the servers is one aspect. There's also machine ID, and there's a products key that comprise the identity data. And when you take those three elements and send them across the servers, you have a complete identification of that computer. And because the claims require multi-factors and are agnostic as to whether or not the digital ID alone can authenticate the user, the system as a whole functions quite well. How does the SKU number have the effect of authenticating, that is to say, distinguishing between persons in possession of the product who are authorized to use the product and those who are not? The SKU data would not have the effect of distinguishing between two individuals that have the same SKU data, but it would have the effect of distinguishing between individuals that have proper SKU data and individuals that have no or improper SKU data. And when combined with the other factors... Then wouldn't it be equally a digital identification if that's sufficient for the machine simply to say, well, this is a machine-readable text as step one? It was distinguished between people who had machine-readable text, even if it's not the product, versus those who don't. I think the confusion comes from the fact that the data that is being compared is called SKU data and contains additional information about the products. But the important part from the invention's perspective is that there is data that is on the hardware key and is compared to data on the servers and those two things must match as part of the authorization process or the process will not complete. That's what's claimed and that's exactly what happens. We have ample evidence to show that. So it doesn't matter in Prism's view that the SKU data also tells you about the products. I mean, it could say anything. Let me ask you this before we fail to get to the Trend Micro part of the case. I want to make sure that we touch on this. So changing gears for the moment. Assume for present purposes that you do not prevail on the part of the case with respect to Symantec and McAfee. What difference would you show to the district court on remand if you were to obtain a remand with respect to Trend Micro that would not be covered by a ruling that, for example, the SKU data does not constitute digital identification? I think in that instance we would have a new claim construction that varies significantly from the one entered by the district court and entered again after we filed our papers. He came to the same claim construction in a related case months later. And so the proper course would be to send the case back to the district court. Well, but you would want that remedy for all of the defendants, right? I do. But suppose that we were to say we don't regard it as a new construction that prejudiced you, and number two, that you lose on the merits with respect to McAfee and Symantec. What difference is there between Trend Micro that's material and the other two defendants? Is there any? We haven't had the opportunity to put that case together is the answer. But you had full discovery in this case. We did have full discovery. So you would know the answer to that question. Here's what the bottom line. If you're asking us to send that case back, is that going to be, assuming we affirm across the board on the rest of the case, is that going to be a silly and futile exercise that will take 15 seconds when the district judge looks down at you and says, what's the difference between Trend Micro and the other defendants? And you say, we really can't point to any. I don't think there would be a large substantive difference in the facts. But again, we haven't put everything together. So I would want the opportunity at least to be able to do that. I'm into my rebuttal time. Can I ask you just one other question on going to the claim language? If you look at, let's take claim 87. This is present in all of the asserted claims. The language generating a digital identification of the hardware key associated with the client computer device. The generation of the key that's referred to there is generation of a key that is associated with the device in what is your theory of why that key at the time of generation is associated with the computer device? This is pretty straightforward. And there is a dispute of fact about this. And this, in our opinion, was not raised below. But the hardware key is associated with the client computer device. How? By being inserted into the disk. But that doesn't happen until long after the generation of the digital identification of the hardware key, correct? Generation of the digital ID of the hardware key. The generation is done much earlier. The hardware key. If the hardware key is the digital identification, the hardware key, i.e. the CD, is generated very early. It isn't associated until I buy the CD and stick it in my machine, right? Very well may be. But I don't believe that that claim language has a temporal limitation within it about the generation having to happen contemporaneously with inserting the hardware key. So you're reading it to say generating a digital identification of the hardware key, which at some later time may be associated with. Yes, I don't believe the claim language as written there has the limitation that it has to happen contemporaneously. Thank you. Thank you. Mr. Bannis, we'll give you three minutes of rebuttal time. Thank you. Mr. Bagatelle. Good morning, Mr. Court. Dan Bagatelle on behalf of McAfee. With me are Dean Dunleavy for Symantec and Mr. Pankowski for Trend Micro. I plan to handle the bulk of the argument, but if the court does have questions that are unique to either of those defendants, they're available to answer questions. In our view, though, the systems operate with no material differences for purposes of this case. In fact, there's no genuine disputed material fact about how they operate. It was for the District Court to determine whether that operation fell within the scope of the asserted claims, and we believe that the District Court correctly held that it did not in granting summary judgment of non-infringement. Well, I mean, you agree that it's a two-step process. It's got to construe the claims first and then apply that construction to the infringement allegations, correct? Yes. Is it true that this more vague construction that says simply that digital data whose value is known in advance are calculated in the moment is a construction that he's continuing to use in related cases? Well, what he has done in related cases is that construction wasn't disputed in later cases. There's no real issue about the unique identification in the telephone cases because a SIM card uniquely identifies the user. What the two issues in that claim construction, the second claim construction order were were does it need to identify a user versus a computer? We argued based on the specification that the digital identification needed to identify the user slash account holder, and there is claim language referring to the client computer device, and so the court said it can be either one of those two. It also said that it doesn't have to uniquely identify one of those two. The court didn't back off on either of those holdings in its final summary judgment order. Both of those orders are still the same. But the court didn't say those holdings didn't show up until the summary judgment, and yet there's nothing in the summary judgment where the court seems to say, I'm amending my claim construction or clarifying my claim construction. It just simply doesn't talk about that. I didn't read the second claim construction order to suggest that a digital identification need not identify anything because, I think as we've discussed, the claim language requires a digital identification of something, and the court in its very first claim construction order indicated what the point of a digital identification was. It has to be predetermined because you're doing a comparison of the digital identification that's initially stored in that clearinghouse or server, and then you're retrieving the information from the client computer device and comparing that information with the stored information, so it needs to be predetermined. And the district court said the point of that determination is to determine whether the user is allowed to access the protected resources. So he made clear in the very first claim construction order that that's the point of the... Construing different terms. I mean, maybe you invited the confusion by saying we need to do this seriatim instead of in one claim construction order. Well, he said that it had to be a predetermined digital identification because that's the point of the comparison. And he made that clear in his final summary judgment ruling. I think what's going on is that PRISM has been trying to analyze the words digital identification in isolation rather than in context, and if we look at the claim language, the claim language makes clear that the digital identification has to be associated with the client computer device. That's actually true for Claim 87 as well as Claim 186 and 187. And associated at the time it's generated, not at the time that it was ultimately placed into the machine. And if you'd like me to walk through Claim 87, I'm happy to explain why that's the case. It refers to storing identity data of the client computer device into a clearinghouse. That's all of the identity data, including the digital identification. So we know that the next step actually says that the identity data comprise a digital identification. So we know that all the identity data are stored into a clearinghouse. And it has to be associated, or it's identity data of the client computer device. So all of the identity data relate to the client computer device. All of them are stored in advance into the clearinghouse. Well, I guess the question is the words in advance. I mean, if you accept the argument of your opposing counsel that there's no temporal requirement in any of these claims, and the associated with can occur at a later time than the generation and storing. Well, the problem with that is twofold. One, the specification makes it clear that you need to do this comparison of the pre-store value to the retrieved value. Second of all, that was decided in the first claim construction order, and it's law of the case. A hardware key, which required that the digital identification be predetermined. Precisely because it needs to be compared with a later retrieved value. You can't perform the same comparison unless you've got a pre-store value. Well, predetermined. What do you mean by predetermined, then, I guess is the question. There's an extent to which the two arguments here are passing by one another. But if you mean by predetermined that the hardware key, in their view, the CD, is predetermined when the hardware key is made. Right? The CD. True, except for the fact that the digital identification that they are accusing doesn't identify a computer or any user. Right, but they say it doesn't have to. It just has to help you down the road. And it provides a little bit of a help by telling you that whoever puts this CD in their machine has at least eliminated all people who don't have the right product. Well, the problem with it... I think that's the gist of it. That's the gist of the theory. But the problem with it is that it contradicts both the claim language and the specification. What's the clearest contradiction between that theory and the claim language that does not rely on any kind of temporal sequencing? Well, they are arguing that it's associated with on the fly. I mean that point. I'm sorry. I'm sorry. Go ahead. The argument for why the digital identification has to identify the client computer device or the user comes straight out of the claim language, which I've just cited. The identity data of the client computer device in Claim 87 and a digital identification associated with at least one client computer device in Claims 186 and 187. It also is clear from the specification. Now, that's the whole point of the two-factor authentication. You're not just going to be doing stuff on the fly. You're typing in your name and your password. You're going to be comparing that information to information that's been stored on the server. The specification couldn't be clearer, but that's the point of it. In fact, in other moments in this case and in other cases, PRISM has conceded that that's the invention here. So we think it's crystal clear from both the claims and the specification that the digital identification has to identify a client computer device or a user. And in this case, I think it's undisputed that it doesn't. Exactly. Part of the problem here, as Judge Bryson says, these arguments are a little all over the place. I mean, normally someone would come in here and say, the district court's claim construction was right and we support that claim construction. I'm still not sure what the district court's claim construction was ultimately or what it is you think the claim construction should be because it's definitely different than what you posed below, right? Well, what we posed below was a construction that required unique identification of the account holder slash user. And we lost on the point whether it had to uniquely identify and we lost on the point whether it needed to identify a user as opposed to a client computer. Those were the two issues the district court addressed. The district court didn't specify in that construction what the digital identification had to identify because that wasn't posed in that claim construction debate. But I don't think the district court ever suggested that a digital identification need not identify anyone or anything. And when it came down to when that issue was posed, whether it could be just the product or a user slash client computer device, the district court made very clear that it has to identify one of the two, not the product itself. So let me try to understand then. If it doesn't have to uniquely identify anything, then what is it identifying if it's only identifying the computer? But it's not uniquely identifying that computer. Well, we have argued and we continue to argue as an alternative ground to support the judgment that it needs to uniquely identify. That's clear from column 19. That's the primary purpose of the digital identification is to uniquely identify the user. The specification says that repeatedly. But even if you take out the uniqueness requirement, this doesn't identify it whatsoever. It doesn't seem to put it in a class of users. Except the class of people who have the product. It's in a class of people who may have the product, but we all know that disks get handed around and we don't know. They may have the disk, but it doesn't tell you whether they're in the class of people who are authorized to use the software. So it doesn't have a distinguishing feature  except by implication that people who don't even have the product obviously aren't authorized. These are completely generic CDs. Every CD for every user who ordered antivirus 2012 has the same CD with the same specification. Right. We understand that. So with the district court construction, let me give you an example. If you were to put in a hardware key and it said, all right, this is a computer that was issued by the United States courts. So we would have a class of people who were entitled to use these particular computers. Would that satisfy the claim or not? I think it would satisfy the district court's construction. Our belief is it needs to uniquely identify a user slash account holder. And do you need that to be the case? We do not need that to win because the accused digital identification here doesn't identify a computer or a user whatsoever uniquely or otherwise. It only identifies the product. There's no disputed factor for that. I think Mr. Vance just conceded that here this morning. So we don't need that to win. We certainly continue to contend that the unique ID requirement is clear from the claim language which refers to identification and the specification which makes clear that the identification serves to uniquely identify the person who's got that hardware key. It's been assigned to me. It is true that Claims 186 and 187 talk about one or more computers. But that's because I have a couple of computers checked out to me from my firm. And it may well be that it can be associated with one or more computers. It's still linked to me. And in that sense, we accept the claim language that it allows a digital identification of one or more client computer devices. But it still must identify either me or the computers that are assigned to me. And we believe it needs to uniquely do so. But we don't need to. And what's the difference between digital identification and identity data? Identity data are a superset. The classic example is the name and password that you type in. That could be part of the identity data more broadly. But it doesn't have to come from the hardware key. It is, in terms of claim... Well, if the hardware key tells you uniquely who the person is or who the person's computer is, why do you need the second step? Why do you need the double authentication? There could be circumstances where the hardware key was stolen, for example. Built-in suspenders, is that the area? It's a two-factor authentication system. Well, it can't function without the hardware key, right? Well, the specification refers to single-factor authentication. But these claims are limited to ones that involve something held and something that the user supplies. For example, in our systems, we have a serial number that's entered by each individual user. That's one factor that we use. They're also relying on the machine ID, which, by the way, cannot be part of the identity data because it's not known until... It's never stored in advance in the system. The first time you enter in your serial number, it has no idea what machine you're on. It has to calculate the machine ID and then save it into the system. So we use a serial number to identify the users that are allowed to access. They may have a one- or two-seat license, and so you might associate it with one or two computers. And that's it. We don't use the SKU number to identify any user or computer. The only thing we do with the SKU numbers is to make sure that the serial number falls within a group that's assigned to that particular SKU. That's not identifying any user or any computer. And the claims don't simply require using a digital identification somehow in an authentication process. There's no DOE claim here anymore. It's a literal infringement claim. The claims require that the digital identification identify the user or computer, and the accused digital identification SKU number simply doesn't do that. And for that reason, the district court got it right in the end. I will acknowledge we were not particularly thrilled with the second claim construction, but both at the beginning and the end, the district court recognized the role of that digital identification, and it came to the right result. And we submit that you should affirm the summary judgment of non-infringement. If you would like, I can yield before you. Well, let me just ask you, and I don't think this will require anybody else to stand up, but just very quickly on Trent. I take it your position is there is no material difference between a SKU SKU number and a PID, which I think is Trent's device. Is that... There are no material differences for purposes of this case. It identifies the product, Norton Antivirus 2011, or Trent's particular product. And only identifies the product. It goes no farther than that. It has nothing to say about where the product was purchased, who purchased it, any of that. That's my understanding, and Mr. Pentecoste can confirm that. Why did they back off of the argument, then, in the second summary judgment? I can't answer. Well, I can say that they filed their own additional summary judgment motion on that topic. It hadn't been fully briefed at the time, but it was the same argument that the other two defendants had already made. It was before the court, and the court realized there was no material difference among the defendants, and said that the same result applied to Trent. But I can't answer Trent's litigation strategy questions. Thank you. Thank you, Mr. Bagatelle. Mr. Bancas has three minutes. Thank you, Your Honor. I don't believe that the district court did change its claims instruction. I think that is evident from the claims instruction order he originally entered, from the summary judgment order itself, which does not mention change in claims instruction, and from the later orders that adopt the same construction that PRISM believes is correct. Instead, thinking about the order, I think the heart of the confusion of the district court was his understanding of the word comprising. Because the district court erred in believing that comprising meant limited to, and not including but limited to, the district court erroneously concluded that the digital ID alone must be capable of satisfying the invention, and that PRISM should not be allowed to enter a theory where digital identification is part of the process, but the identity data, the superset, contains additional identifying information. That is contrary to law, and the common understanding of the word comprising. Because the district court did not understand that PRISM's theory in that regard, and didn't accept it, it felt that because the digital ID, in this case, did not completely provide all the information required, that was enough for a non-stringent finding. But here, we have shown that we meet that definition of digital identification with the SKU data that is compared. The defendant's systems, the appellee's systems, do not activate or authorize without that comparison. And there is additional data contemplated by the claims, and the identity data that provides a complete, um, identification. In addition, we should note, for the record, that predetermined has been construed to mean known in advance or calculated in the moment. So machine ID, for example, that's calculated in the moment, still fits within the definition that multiple district courts accept. But it is true, though, that in the claim construction order where we addressed the question of hardware key, that the trial court specifically said that the reason that it had to be predetermined was that, because otherwise it wouldn't be able to compare the hardware key's digital identification and the authorization stored on the clearinghouse. Without such a comparison, authentication of the user's identity would not be possible. Clearly, he was contemplating that you have to identify something about the user from the hardware key. Nowhere in what you just read, respectfully, does it say identifying a user. The judge was focused on having data on both sides of the firewall. Data coming from the hardware key to be compared against data on the servers, which is exactly what happens in this case. The digital ID, in this case SKU data, is sent to the servers and compared. It is known in advance and sent to the servers and compared, and authorization will not occur unless there is a match. Okay, well then what about when, from the, when he, in the second claim construction order, he says defendant's quotations would appear to support Prism's contention that the digital identification need not identify an account holder, but is a more general term that it could also identify a machine or device. And then he quotes from, from column 19, the hardware key's main function is to uniquely identify a user and or a device. I mean, didn't, isn't it clear that he's saying there has to be some identification of the user or device? Yeah, I think the question presented really is how much or how unique must this identification be? And I think that is a difficult call to make. I think that the correct call is the one that the courts have come to, which is it has to be enough to provide information on the hardware key that can be compared to information stored on the back-end servers to make sure there's a match. Any kind of password would do. The defendant's used SKU data and that performs the claims. If you want more, so that is one factor. Additional factors in the identity data can include things like the machine ID, which is unique to the components on that machine, or the product key, which is provided on a piece of paper to the end user to type in. You combine those three and you have a very robust activation system. Thank you, Mr. Banner. Question to Delta? Yes, thank you. I will take the case number five. Thank you.